IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| XONA SYSTEMS, INC., ) <br> 7526 Connelley Drive, Suite H ) <br> Hanover, Maryland 21076 ) <br>   ) <br> *Plaintiff*, ) <br>   ) <br> v. ) <br>   ) <br> HYPERPORT INC. ) <br> 2414 Magnolia Avenue ) <br> Petaluma, California 94952 ) <br>   ) <br> RANDY CHEEK ) <br> 2414 Magnolia Avenue ) <br> Petaluma, California 94952 ) <br>   ) <br> ADRIAN WITHY ) <br> 225 Babette Court ) <br> Pleasant Hill, California 94523 ) <br>   ) <br> *Defendants*. ) <br>   ) | Case No. 1:24-cv-3401 |

## COMPLAINT

Plaintiff Xona Systems Inc. ("Xona" or "Company"), for its complaint against Defendants Randy Cheek ("Mr. Cheek"), Adrian Withy ("Mr. Withy", collectively with Mr. Cheek, the "Individual Defendants", or each an "Obligor"), and Hyperport Inc., ("Hyperport", collectively with the Individual Defendants, the "Defendants"), hereby states as follows:

### Introduction

1.  Xona Systems Inc. ("Xona" or "Company") enables companies to remotely and securely access operational technology—anytime, anywhere, on any device. Xona's platform delivers the operational capacity a client's workforce requires, plus the mobility and work-from-anywhere

flexibility they demand. Xona's platform also helps make the most of reduced revenues and shrinking budgets by driving significant improvements in financial and resource management.

2. Individual Defendants, while employed by Xona, breached their contractual and fiduciary obligations and founded their own company, Hyperport, to compete with Xona. While employed by Xona, they collected Xona's confidential trade secrets involving customer, pricing, revenue, and other sensitive information relating to Xona's business in order to aid Hyperport's start-up and development.

3. Within a matter of weeks after the Individual Defendants left their employment with Xona, Mr. Cheek sent an unsolicited email to numerous Xona prospects and contacts, apparently using Xona's customer list information, advertising Hyperport.io as a "stealth" startup "building the next generation of Secure Remote Access for OT," which you claim to "leverage[e] advancements in Identity, Just in Time Authorization, zero-trust networking (NAC), Scalability, and Multisite distributions." The solutions the Defendants described are solutions developed by Xona, and the Defendants realistically can only have offered such solutions so soon after Hyperport started by using, and therefore misappropriating, Xona technology and trade secrets in order to develop and offer these solutions.

4. Individual Defendants' incorporation of Hyperport violated the Invention Assignment and Confidentiality Agreements ("IACA") and Mutual Non-Disclosure Agreements ("NDA") they'd signed as a condition of their employment. Individual Defendants also apparently used Xona information they'd wrongfully retained for the benefit of Hyperport's start up and development. Hyperport was aware of and participated in Individual Defendants' breach of their contractual and fiduciary duties and their misappropriation of confidential information. Xona seeks injunctive relief and damages.

**Parties**

1. Xona is a Delaware corporation with its principal place of business at 3446 Merrimac Road, Davidsonville, Maryland 21305.

2. Defendant Adrian Withy ("Mr. Withy"), a citizen of California, was employed as Chief Technology Officer by Xona, working remotely from his home in Pleasant Hill, California, from March 1, 2023, until his resignation on April 5, 2024. Mr. Withy's address is 225 Babette Court, Pleasant Hill, California 94523. Mr. Withy is the CFO and an officer of Hyperport.

3. Defendant Randy Cheek ("Mr. Cheek"), a citizen of California, was employed as Vice President of Global Sales by Xona, working remotely from his home in Petaluma, California, from December 1, 2021, until his termination on March 11, 2024. Mr. Cheek's address is 2414 Magnolia Avenue, Petaluma, California 94952. Mr. Cheek is the CEO and registered agent of Hyperport.

4. Hyperport is a California corporation with its principal place of business at 2414 Magnolia Avenue, Petaluma, California 94952. Hyperport was incorporated on March 27, 2024, and its domain name, Hyperport.io, was registered on March 21, 2024.

**Jurisdiction and Venue**

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which grants original jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States." Xona has stated a claim under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, a law of the United States.

6. This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), which grants to the United States District Courts original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest

and costs" and between citizens of different states. The amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to Xona's claims occurred in the District of Maryland, where Individual Defendants were employed by Xona. Moreover, each of the Individual Defendants has acknowledged a Mutual Non-Disclosure Agreement ("NDA") with Xona providing, "Each of the parties irrevocably consents to the exclusive personal jurisdiction of the federal and state courts located in Maryland, as applicable, for any matter arising out of or relating to this Agreement …."

## Facts

### Individual Defendants

8. In consideration of their employment, Individual Defendants agreed to and signed Inventions Assignment and Confidentiality Agreements ("IACAs"), attached hereto as **Exhibit A and B**, respectively.

9. In their IACAs, Individual Defendants agreed to "keep and hold all such Proprietary Information in strict confidence and trust" and not to "use or disclose any Proprietary Information without the prior written consent of [Xona]." **Exhs. A & B**, ¶ 9.

10. "Proprietary Information" under the IACAs means "any information of a confidential or secret nature that may be disclosed to the Obligor by the Company or a third party that related to the business of the Company or to the business of any parent, subsidiary, affiliate, customer or supplier of the Company or any other party with whom the Company agrees to hold information of such party in confident." This includes, but is not limited to "Assigned Inventions, marketing plans, product plans, product formulas, business strategies, financial information, forecasts,

4

personnel information, customer lists and data, agreements, trade secrets and domain names." **Exhs. A & B**, ¶ 8.

11.  After their employment ended, Individual Defendants were also required to "promptly deliver to the Company all documents and materials of any nature pertaining to Obligor's work with the Company and, upon Company request, [] execute a document confirming Obligor's agreement to honor Obligor's responsibilities contained in this Agreement." **Exhs. A & B**, ¶ 9.

12.  In their IACAs, Individual Defendants also agreed that "[w]hile engaged by the Company, Obligor will not, … provide services to, or assist in any manner, any business or third party if such services or assistance would be in direct conflict with the Company's business interests." **Exhs. A & B**, ¶ 11.

13.  Individual Defendants also agreed that "for a period of one (1) year [after their employment with the Company ends], Obligor will not directly or indirectly use trade secrets to (a) solicit suppliers or customers of the Company if the identity of the supplier or customer or information about the supplier or customer relationship is a trade secret or is otherwise deemed confidential information within the meaning of California law[.]" **Exhs. A & B**, ¶ 14.

14.  Individual Defendants also signed an NDA, attached hereto as **Exhibits C and D,** wherein they agreed not to use or disclose Xona's confidential information.

15.  The NDA defines "Confidential Information" as:

> (a) any technical and non-technical information related to a party's business and current, future and proposed products and services of each of the parties, including for example and without limitation, each party's respective information concerning research, development, design details and specifications, financial information, procurement requirements, engineering and manufacturing information, customer lists, business forecasts, sales information and marketing plans and (b) any information a party has received from others that may be made known to the other party and which a party is obligated to treat as confidential or proprietary, except that information disclosed by a party to this Agreement (the "Discloser") will be considered Confidential Information of Discloser by the other party (the

5

"Recipient"), only if the information (a) is provided as information fixed in tangible form or in writing (e.g., paper, disk or electronic mail), is conspicuously designated as "Confidential" (or with some other similar legend) or (b) if provided orally, is identified as confidential at the time of disclosure and confirmed in writing within thirty (30) days of disclosure.

**Exhs. C & D**, ¶ 1.

16. Besides Individual Defendants' contractual obligations outlined above, they had a common law duty of loyalty and faithful service to Xona that required them: (1) to maintain the secrecy of any of Xona's confidential information or trade secrets in their care and (2) not to steal client information and other financial information for the benefit of a competitor in the event they left Xona's employment. *See Weichert Co. of Maryland v. Faust*, 419 Md. 306, 318 (2011) ("It is clear that the duty of loyalty is an implied duty, read into every contract of employment, and requires that an employee act solely for the benefit of [their] employer in all matters within the scope of employment, avoiding all conflicts between [their] duty to the employer and [their] own self-interest.")(internal citations omitted).

17. Individual Defendants breached these duties by using their employment at Xona to gather confidential and proprietary information that would assist Hyperport's business and client development, which constitutes solicitation under Maryland law. *See C-E-I-R, Inc. v. Computer Dynamics Corp.*, 229 Md. 357, 367–68 (1962) (discussing how the employees took advantage of their "key positions" "to gain highly valuable information about the operations of the Bureau which would have put the corporation in a favorable bargaining or bidding position for future business with the Bureau," which created "an unfair situation [] whereby [the employees] were able to absorb this unique experience and solidify their contacts with Bureau officials on C-E-I-R's time and at that company's expense, and to use these advantages later as planned for the benefit of a competing corporation. The training that the appellees received enabled the Computer Dynamics Corporation to begin immediate operations and the detailed draft proposal drawn up by

Rulscak for submission to the Bureau is evidence of the extent of knowledge which the appellees had gained at the expense of C-E-I-R.").

18.     Xona took numerous precautions to maintain the confidentiality of its customer list, pricing, revenue, and other sensitive business information in order to prevent it from being disclosed to third parties, including: reminding employees of their duties of confidentiality, maintaining confidential information in electronic databases protected by adequate security measures and requiring authorized usernames and passcodes to access. These trade secrets provided Xona direct economic value that allowed it to maintain and further develop its business. In order to carry on its regular business, however, Xona had to make this information available to employees like Individual Defendants.

### Hyperport

19.     In April 2024, Xona learned that Individual Defendants went to work for Hyperport after resigning from Xona.

20.     Hyperport was founded by the Individual Defendants prior to the end of their employment with Xona. Thus, Hyperport was aware of the Individual Defendants' employment obligations and post-employment covenant not to solicit Xona customers for one year following termination of their employment with Xona.

21.     On information and belief, Individual Defendants conspired together, using Hyperport, to solicit Xona's customers offering technology solutions developed and sold by Xona.

22.     On information and belief, Hyperport has continued to solicit Xona's customers and prospects using solutions developed by Xona.

23.     Xona has been damaged, and Hyperport has been unjustly enriched, by the wrongful conduct of Hyperport and Individual Defendants.

**Solicitation**

24. On April 16, 2024, Mr. Cheek sent an unsolicited email to numerous Xona prospects and contacts, apparently using Xona's customer list information, advertising Hyperport.io as a "stealth" startup "building the next generation of Secure Remote Access for OT," which you claim to "leverage[e] advancements in Identity, Just in Time Authorization, zero-trust networking (NAC), Scalability, and Multisite distributions."

25. These solutions were developed by Xona and it is impossible for Hyperport to have been able to develop such high-tech offerings within three weeks of its incorporation without using Xona's proprietary and confidential information.

26. Xona discovered the Defendants' improper solicitation and sent a cease and desist letter on April 30, 2024, which also requested that they return any and all Xona confidential information and technology in their possession. The Cease and Desist Letter is attached hereto as **Exhibit E**.

27. On May 7, 2024, Hyperport's counsel responded to Xona's cease and desist demand and confirmed that "Mr. Cheek and Mr. Withy fully intend to abide by all of their obligations pursuant to the Invention Assignment and Confidentiality Agreements" and that "[a]ll of Xona's Proprietary Information [] shall be maintained in strict confidence and trust." The Reply is attached hereto as **Exhibit F**.

28. Less than six months later, on November 6, 2024, Xona learned that the Defendants continued their breach by offering a product that appears to be identical to Xona's (except they changed the color scheme to blue instead of maroon).

**Count I –Breach of Contract**
**(Individual Defendants)**
**[Breach of non-solicitation of customers and confidentiality agreements]**

29. Xona re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

30. The Inventions Assignment and Confidentiality Agreement is a valid and enforceable contract, governed by Virginia law.

31. The Inventions Assignment and Confidentiality Agreements prohibited Individual Defendants from directly or indirectly soliciting Xona's customers within one year of the termination of their employment. **Exhs. A & B**, ¶14.

32. The non-solicitation of customers provisions contain reasonable restrictions regarding the actions to be enjoined, advance Xona's legitimate economic interests, and survive a balancing of the equities.

33. Following the end of their employment, Individual Defendants have, directly or indirectly, called upon, solicited, advised, or otherwise attempted to do business with Xona customers through Hyperport, a competing business.

34. Individual Defendants' actions are breaches of their Inventions Assignment and Confidentiality Agreements.

35. The Mutual Non-Disclosure Agreements are valid and enforceable contracts, governed by Maryland law. **Exhs. C & D**, ¶13.

36. The Mutual Non-Disclosure Agreements prohibited Individual Defendants from using any of Xona's confidential information for their own or any other party's benefit. **Exhs. C & D**, ¶2.

37. Following the end of his employment, Individual Defendants breached the Mutual Non-Disclosure Agreement by using Xona's Confidential Information for their own and Hyperport's benefit.

38. Individual Defendants' actions are a breach of the Mutual Non-Disclosure Agreements.

39. Individual Defendants' breaches have caused and continue to cause damages to Xona in an amount to be determined at trial.

40. Xona does not currently know the amount of its damages, but expects after a reasonable opportunity for further investigation and discovery to find that they are in excess of $75,000.

41. Additionally, Paragraph 13 of the Individual Defendants' NDAs provides that the prevailing party in this action is entitled to receive its "reasonable attorneys' fees, expert witness fees and out-of-pocket costs, in addition to any other relief to which that prevailing party may be entitled."

### Count II – Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836
### (Hyperport and Individual Defendants)

42. Xona re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

43. The information Individual Defendants took—which included customer lists, pricing information, and marketing and sales techniques—meets the definition of "trade secrets" under the Defend Trade Secrets Act ("DTSA"). *See* 18 U.S.C. § 1839(3). This information derives economic value for Xona and is not generally known to third parties outside of Xona. Further, through its various policies, Xona has exerted significant efforts to maintain the secrecy of the information.

44. As alleged above, Individual Defendants violated Xona's policies and used improper means to acquire and disclose Xona's trade secret information. Accordingly, Individual Defendants violated the DTSA.

45. Hyperport violated the DTSA because it knowingly and in bad faith received and used Xona's trade secrets acquired by improper means. *See* 18 U.S.C. § 1839(5)(A).

46. Xona seeks injunctive relief, as articulated below, to require Individual Defendants and Hyperport to return and destroy any Xona trade secrets still in their possession and to prevent Individual Defendants and Hyperport from committing any future and further violations. *See* 18 U.S.C. § 1836(b)(3)(A). Xona also seeks damages for any loss or unjust enrichment caused by the

misappropriation. *See* 18 U.S.C. § 1836(b)(3)(B). Moreover, because Individual Defendants' and Hyperport's actions were willful and malicious, Xona seeks its attorneys' fees and exemplary damages. *See* 18 U.S.C. § 1836(b)(3)(C), (D).

47.  Xona does not currently know the amount of its damages, but expects after a reasonable opportunity for further investigation and discovery to find that they are in excess of $75,000 before the award of attorneys' fees and exemplary damages.

### Count III –
### Violation of Maryland Uniform Trade Secrets Act, Md. Code, Com. Law §§ 11-1201, *et seq*.
### (Hyperport and Individual Defendants)

48.  Xona re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

49.  Individual Defendants and Hyperport violated the Maryland Uniform Trade Secrets Act ("MUTSA"). *See* Md. Code, Com. Law §§ 11-1201, *et seq*. The definition of a "trade secret" under the MUTSA is similar to the definition under the DTSA. *See* Md. Code Ann., Com. Law § 11-1201(e). Additionally, misappropriation under the MUTSA is similar to misappropriation under the DTSA—which includes improper acquisition, disclosure, or use of a trade secret. Md. Code Ann., Com. Law § 11-1201(b)-(c).

50.  "To prevail on a claim for misappropriation of trade secrets under MUTSA, a plaintiff may, but need not necessarily, prove that a defendant personally took some tangible trade secret." *Ingram v. Cantwell-Cleary Co.*, 260 Md. App. 122, 170 (2023).

51.  As described above, the information Individual Defendants took and used for the benefit of Hyperport, qualifies as trade secrets.

52.  Individual Defendants' and Hyperport's actions qualify as misappropriation under the MUTSA.

53. Accordingly, Xona seeks injunctive relief to prevent Individual Defendants and Hyperport from committing any future and further violations. *See* Md. Code Ann., Com. Law § 11-1202(a). Xona also seeks damages for any losses or unjust enrichment caused by the misappropriation. Md. Code Ann., Com. Law § 11-1203(b). Moreover, because Individual Defendants' and Hyperport's actions were willful and malicious, Xona seeks its attorneys' fees and exemplary damages. Md. Code Ann., Com. Law § 11-1203(d).

54. Xona does not currently know the amount of its damages, but expects after a reasonable opportunity for further investigation and discovery to find that they are in excess of $75,000 before the award of exemplary damages.

### Count IV – Tortious Interference with Contract
### (Hyperport)

55. Xona re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

56. The Inventions Assignment and Confidentiality Agreement executed by Individual Defendants is a valid contract.

57. Hyperport knew about the Inventions Assignment and Confidentiality Agreement and willfully and intentionally interfered with Xona's contract rights under the Inventions Assignment and Confidentiality Agreement by causing Individual Defendants to misappropriate Xona's confidential information and trade secrets for Hyperport's benefit and in breach of the Inventions Assignment and Confidentiality Agreement.

58. Moreover, Hyperport's actions were malicious, knowing, and intended for Hyperport's gain and Xona's detriment.

59. Xona accordingly seeks to recover all available monetary damages resulting from Hyperport's interference with the contractual obligations owed to Xona. Xona also seeks

exemplary damages based on Hyperport's willfulness, maliciousness, and reckless disregard for Xona's rights.

### Count V – Breach of Fiduciary Duties
### (Individual Defendants)
### (Fiduciary duty of loyalty by current employees not to misappropriate trade secrets)

60. Xona re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

61. Xona necessarily granted access to its confidential information to Individual Defendants during their employment at Xona.

62. Xona trusted Individual Defendants to protect and develop Xona's business interests and act in the best interest of Xona at all times. For these reasons, Individual Defendants were, whether formally or informally, a fiduciary to Xona. They were, therefore, required to deal in the best of good faith with Xona and to refrain from self-dealing. In sum, they owed a duty of utmost loyalty to Xona.

63. As described above, Individual Defendants engaged in self-dealing and other conduct that was directly contrary to Xona's interests by stealing Xona's information. Thus, they breached their fiduciary duties by the conduct described above.

64. Xona requests damages associated with Individual Defendants' breaches. Additionally, Xona requests injunctive relief to prevent Individual Defendants from profiting from their breaches and specifically requests that the Court order them, and any company in which they was acting in its interest (which includes Hyperport), to disgorge any profits related to Individual Defendants' breaches.

65. Further, Individual Defendants' actions were willful and committed with malice; therefore, Xona seeks exemplary damages.

66. Xona does not currently know the amount of its damages, but expects after a reasonable opportunity for further investigation and discovery to find that they are in excess of $75,000, before any award of exemplary damages.

### Count VI – Aiding and Abetting
### Breach of Fiduciary Duties and Employee Privacy and Non-Compete Agreement
### (Hyperport)

67. Xona re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

68. Individual Defendants had contractual and fiduciary obligations to Xona to protect and safeguard its confidential information.

69. Individual Defendants breached both their contractual and fiduciary obligations by stealing Xona's confidential and proprietary information to Hyperport to assist in its business and client development.

70. Hyperport knowingly and substantially assisted Individual Defendants' theft of Xona's confidential information.

71. Hyperport knew that Individual Defendants' actions regarding Xona's information constituted a breach of their fiduciary duties.

72. Hyperport's conduct has injured Xona.

73. Xona seeks all damages associated with Hyperport's actions, requests equitable relief to prevent Hyperport from profiting from Individual Defendants' actions, and specifically requests that the Court order Hyperport to disgorge any profits related to Individual Defendants' conduct.

74. Xona does not currently know the amount of its damages, but expects after a reasonable opportunity for further investigation and discovery to find that they are in excess of $75,000, before any award of exemplary damages.

## Count VII – Civil Conspiracy
## (Hyperport and Individual Defendants)

75. Xona re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

76. Defendants were members of a common conspiracy. The object of the conspiracy was to accomplish an unlawful purpose: the theft and continuing misuse of Xona's information and property.

77. Defendants had a meeting of the minds to engage in the course of action described above in order to further the business of Hyperport.

78. As described above, Defendants committed the overt acts of theft and breach of fiduciary duty.

79. Xona suffered actual damages as a proximate result of Defendants' conduct. Under Maryland law, conspirators are held jointly and severally liable for all acts done by them in furtherance of their unlawful combination.

80. Xona does not currently know the amount of its damages, but expects after a reasonable opportunity for further investigation and discovery to find that they are in excess of $75,000, before the award of any exemplary damages and should be entered jointly and severally against the Defendants.

## Prayer for Relief

Wherefore, Xona requests the Court to enter judgment against Hyperport and Individual Defendants as follows:

    a.    Compensatory damages in an amount to be determined at trial;

    b.    Restitution in an amount to be determined at trial for Defendants' unjust enrichment;

c. Preliminary and permanent injunctive relief ordering Hyperport and Individual Defendants to return all Xona trade secrets and confidential information in their possession and enjoining them from any further use of Xona's trade secrets and confidential information;

d. Preliminary and permanent injunctive relief enjoining Hyperport and Individual Defendants, from unlawful solicitation of Xona's customers and employees for one year after the termination of Individual Defendants' employment with Xona;

e. Exemplary and punitive damages in an amount to be determined at trial, including double or treble damages as permitted under Md. Code Ann., Com. Law § 11-1203(d) and 18 USC § 1836 (b)(3)(C);

f. Pre-judgment interest in an amount to be determined at trial;

g. Xona's expenses incurred in connection with this litigation, including all costs, reasonable attorneys' fees, and expert fees;

h. Such other and further relief as the Court deems just and proper.

Date: November 25, 2024                Respectfully submitted,

/s/ Matthew J. MacLean
Matthew J. MacLean (Bar No. 17262)
Meaghan Murphy (Bar No. 20697)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
Tel: 202-663-8183
Facsimile: 202-663-8007
matthew.maclean@pillsburylaw.com
meaghan.murphy@pillsburylaw.com

*Counsel for Plaintiff Xona Systems, Inc.*