# INVENTION ASSIGNMENT AND CONFIDENTIALITY AGREEMENT

THIS INVENTION ASSIGNMENT AND CONFIDENTIALITY AGREEMENT (this "***Agreement***") is dated as of December 2nd, 2019.  In consideration of, and as a condition of the engagement of the undersigned ("***Obligor***") as an employee or as an independent contractor by Xona Systems, Inc., a Delaware corporation (the "***Company***"), and/or in consideration for continued employment, Obligor hereby represents to, and agrees with the Company as follows:

1. **Purpose of Agreement.**  Obligor understands that the Company is engaged in a continuous program of research, development, production and marketing in connection with its business and that it is critical for the Company to preserve and protect its "***Proprietary Information***" (as defined in Section 8 below), its rights in "***Inventions***" (as defined in Section 2 below) and in all related intellectual property rights.  Accordingly, Obligor is entering into this Agreement as a condition of Obligor's engagement by the Company, whether or not Obligor is expected to create inventions of value for the Company.

2. **Disclosure of Inventions.**  Obligor will promptly disclose in confidence to the Company all inventions, improvements, designs, original works of authorship, processes, compositions of matter, databases, mask works and trade secrets that Obligor makes or conceives or first reduces to practice or creates, either alone or jointly with others, during the period of engagement, whether or not in the course of Obligor's engagement, and whether or not patentable, copyrightable or protectable as trade secrets (the "***Inventions***").  Following such disclosure, if the Company determines in good faith that the Inventions were not made in the course of Obligor's engagement, the Company hereby agrees to keep such Inventions confidential, not to disclose such Inventions to any third parties and not to use such Inventions for any purpose.

3. **Work for Hire; Assignment of Inventions.**  Obligor acknowledges and agrees that any copyrightable works prepared by or under the supervision of the Obligor within the scope of Obligor's engagement, whether before or after the date of this Agreement, are "works for hire" under the United States Copyright Act and that the Company will be considered the author and owner of such copyrightable works.  Obligor agrees that all Inventions that (a) are developed using equipment, supplies, facilities or trade secrets of the Company, (b) result from work performed by Obligor for the Company, whether before or after the date of this Agreement, or (c) relate to the Company's business or actual or demonstrably anticipated research and product development, even if Obligor solely uses Obligor's own time and does not use any Company time, materials, facilities, machines or property (the "***Assigned Inventions***"), will be the sole and exclusive property of the Company.  Obligor hereby irrevocably assigns, and agrees to assign, the Assigned Inventions to the Company**.**

4. **Assignment of Other Rights.**  In addition to the foregoing assignment of Assigned Inventions to the Company, Obligor hereby irrevocably transfers and assigns to the Company:  (a) all worldwide patents, patent applications, copyrights, mask works, trade secrets and other intellectual property rights, including but not limited to rights in databases, in any Assigned Inventions, along with any registrations of or applications to register such rights; and (b) any and all "Moral Rights" (as defined below) that Obligor may have in or with respect to any Assigned Inventions.  Obligor also hereby forever waives and agrees never to assert any and all Moral Rights Obligor may have in or with respect to any Assigned Inventions, even after termination of Obligor's work on behalf of the Company.  "***Moral Rights***" mean any rights to claim authorship of or credit for an Assigned Invention, to object to or prevent the modification or destruction of any Assigned Inventions, or to withdraw from circulation or control the publication or distribution of any Assigned Inventions, and any similar right, existing under judicial or

statutory law of any country or subdivision thereof in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right".

5. **Assistance**.  Obligor agrees to assist the Company in every proper way to obtain for the Company and enforce patents, copyrights, trademarks, mask work rights, trade secret rights and other legal protections for the Company's Assigned Inventions in any and all countries.  Obligor will execute any documents that the Company may reasonably request for use in obtaining or enforcing such patents, copyrights, trademarks, mask work rights, trade secrets and other legal protections.  Obligor's obligations under this paragraph will continue beyond the termination of Obligor's engagement with the Company, provided that the Company will compensate Obligor after such termination commensurate with Obligor most recent salary with the Company for time or expenses actually spent by Obligor at the Company's request on such assistance.  Obligor appoints the Manager of the Company as Obligor's attorney-in-fact to execute documents on Obligor's behalf for this purpose.

6. **Prior Inventions**.  Unless set forth on Exhibit A, Obligor represents that Obligor has no Inventions, patented or unpatented, which Obligor made prior to the commencement of Obligor's engagement with the Company.  Such Inventions listed on Exhibit A, if any, are excluded from the scope of this Agreement.  Exhibit A is a complete list of all Inventions that Obligor has, alone or jointly with others, conceived, developed or reduced to practice or caused to be conceived, developed or reduced to practice prior to the commencement of Obligor's engagement with the Company, that Obligor considers to be Obligor's property or the property of third parties and that Obligor wishes to have excluded from the scope of this Agreement (collectively referred to as "***Prior Inventions***").  If disclosure of any such Prior Invention would cause Obligor to violate any prior confidentiality agreement, Obligor understands that Obligor is not to list such Prior Inventions in Exhibit A but will only disclose a cursory name for each such invention, a listing of the party(ies) to whom it belongs and the fact that full disclosure as to such inventions has not been made for that reason.  If no such disclosure is attached, Obligor represents that there are no Prior Inventions.  If, in the course of Obligor's engagement with the Company, Obligor incorporates a Prior Invention into a Company product, process or machine, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to make, have made, modify, use and sell such Prior Invention.  Notwithstanding the foregoing, Obligor agrees not to incorporate, or permit to be incorporated, Prior Inventions in any Company Inventions without the Company's prior written consent.

8. **Proprietary Information**.  Obligor understands that Obligor's engagement by the Company creates a relationship of confidence and trust with respect to any information of a confidential or secret nature that may be disclosed to Obligor by the Company or a third party that relates to the business of the Company or to the business of any parent, subsidiary, affiliate, customer or supplier of the Company or any other party with whom the Company agrees to hold information of such party in confidence (the "***Proprietary Information***").  Such Proprietary Information includes, but is not limited to, Assigned Inventions, marketing plans, product plans, product formulas, business strategies, financial information, forecasts, personnel information, customer lists and data, agreements, trade secrets and domain names.

9. **Confidentiality**.  At all times, both during Obligor's engagement and after its termination, Obligor will keep and hold all such Proprietary Information in strict confidence and trust.  Obligor will not use or disclose any Proprietary Information without the prior written consent of the Company, except as may be required by law or legal process or as may be necessary to perform Obligor's duties as an employee of the Company for the benefit of the Company.  In addition, Obligor will not be bound to refrain from such use or disclosure of such Proprietary Information that (a) is now or thereafter becomes generally known or available to the public, through no act or omission on Obligor's part; (b) was known by Obligor prior to receiving such information from the Company and without restriction as to use

or disclosure; (c) is rightfully acquired by Obligor from a third party who has the right to disclose it and who provides it without restriction as to use or disclosure; or (d) unless such Proprietary Information is related to any Assigned Invention, is independently developed by Obligor without access to any Proprietary Information of the Company.  Upon termination of Obligor's engagement with the Company, Obligor will promptly deliver to the Company all documents and materials of any nature pertaining to Obligor's work with the Company and, upon Company request, will execute a document confirming Obligor's agreement to honor Obligor's responsibilities contained in this Agreement.  Obligor will not take with Obligor or retain any documents or materials or copies thereof containing any Proprietary Information.

10. **No Breach of Prior Agreement**.  Obligor represents that Obligor's performance of all the terms of this Agreement and Obligor's duties as an employee or independent contractor of the Company will not breach any invention assignment, proprietary information, confidentiality or similar agreement with any former employer or other party.  Obligor represents that Obligor will not bring to the Company or use in the performance of duties for the Company any documents or materials or intangibles of a former employer or third party that are not generally available to the public or have not been legally transferred to the Company.

11. **Efforts; No Conflict**.  While engaged by the Company, Obligor will not, without the Company's express prior written consent, provide services to, or assist in any manner, any business or third party if such services or assistance would be in direct conflict with the Company's business interests.

12. **Notification**.  Obligor hereby authorizes the Company to notify third parties, including, without limitation, customers and actual or potential employers, of the terms of this Agreement and Obligor's responsibilities hereunder.

13. **Non-Solicitation of Employees/Consultants.**   During Obligor's engagement with the Company and for a period of one (1) year thereafter, Obligor will not directly or indirectly solicit employees or consultants of the Company for Obligor's own benefit or for the benefit of any other person or entity or to otherwise leave their employment or engagement with the Company.

14. **Non-Solicitation of Suppliers/Customers**.  During Obligor's engagement with the Company and for a period of one (1) year thereafter, Obligor will not directly or indirectly use trade secrets to (a) solicit suppliers or customers of the Company if the identity of the supplier or customer or information about the supplier or customer relationship is a trade secret or is otherwise deemed confidential information within the meaning of California law, and (b) request or advise any suppliers or customers to withdraw, curtail, or cancel any business they have with the Company.

15. **Name and Likeness Rights**.  Obligor hereby authorizes the Company to use, reuse, and to grant others the right to use and reuse, Obligor's name, photograph, likeness (including caricature) and biographical information, and any reproduction or simulation thereof, in any form of media or technology now known or hereafter developed (including, but not limited to, film, video and digital or other electronic media), both during and after Obligor's engagement, for any purposes related to the Company's business, such as marketing, advertising, credits, and presentations.

16. **Injunctive Relief**.  Obligor understands that in the event of a breach or threatened breach of this Agreement by Obligor, the Company may suffer irreparable harm and will therefore be entitled to injunctive relief to enforce this Agreement.

17. **Governing Law; Severability**.  This Agreement will be governed by and construed in accordance with the laws of the State of Virginia, without giving effect to its laws pertaining to conflict of laws.  If any provision of this Agreement is determined by any court or arbitrator of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto.  If such clause or provision cannot be so enforced, such provision shall be stricken from this Agreement and the remainder of this Agreement shall be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement.

18. **Counterparts**.  This Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all of which together shall constitute one and the same agreement.

19. **Entire Agreement**.  This Agreement and the documents referred to herein constitute the entire agreement and understanding of the parties with respect to the subject matter of this Agreement, and supersede all prior understandings and agreements, whether oral or written, between or among the parties hereto with respect to the specific subject matter hereof.

20. **Amendment and Waivers.**  This Agreement may be amended, and any term or provision hereof waived, only by a written agreement executed by each of the parties hereto.  No amendment of or waiver of, or modification of any obligation under this Agreement will be enforceable unless set forth in a writing signed by the party against which enforcement is sought.  Any amendment effected in accordance with this section will be binding upon all parties hereto and each of their respective successors and assigns.  No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance.  No waiver granted under this Agreement as to any one provision herein shall constitute a subsequent waiver of such provision or of any other provision herein, nor shall it constitute the waiver of any performance other than the actual performance specifically waived.

21. **Successors and Assigns; Assignment**.  Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives.  The Company may assign any of its rights and obligations under this Agreement.  No other party to this Agreement may assign, whether voluntarily or by operation of law, any of its rights and obligations under this Agreement, except with the prior written consent of the Company.

22. **Further Assurances**.  The parties agree to execute such further documents and instruments and to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

23. **No Employment**.  Obligor understands that this Agreement does not constitute a contract of employment or obligate the Company to employ Obligor.

*[Signature page to follow]*

**OBLIGOR HAS READ THIS AGREEMENT CAREFULLY AND UNDERSTANDS ITS TERMS. THIS AGREEMENT AFFECTS OBLIGOR'S RIGHTS TO INVENTIONS OBLIGOR MAKES DURING OBLIGOR'S ENGAGEMENT, AND RESTRICTS OBLIGOR'S RIGHT TO DISCLOSE OR USE THE COMPANY'S CONFIDENTIAL INFORMATION DURING OR SUBSEQUENT TO OBLIGOR ENGAGEMENT.**

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first written above.

**Company:**

**Xona Systems, Inc.,
a Delaware corporation**

By: *William Moore*
Name: William Moore
Title: CEO


**Obligor:**

By: *Randy Cheek*
Print Name: Randy Cheek

*[Signature Page to Invention Assignment and Confidentiality Agreement]*

Invention Assignment & Confidentiality Agreement         5

4827-3161-1528.v1

**Exhibit A**

**Prior Inventions**

n/a