IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

XONA SYSTEMS, INC.,

    Plaintiff,

v.      Civil No. 24-3401-BAH

HYPERPORT, INC., ET AL.

    Defendants.

## MEMORANDUM OPINION

Xona Systems, Inc. ("Plaintiff" or "Xona") brought suit against Hyperport, Inc. ("Hyperport"), Adrian Withy ("Withy"), and Randy Cheek ("Cheek") (collectively "Defendants") alleging breach of contract (Count I), violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 (Count II), violation of Maryland Uniform Trade Secrets Act, Md. Code, Com. Law §§ 11-1201, *et seq.* (Count III), tortious interference with contract (Count IV), breach of fiduciary duties (Count V), aiding and abetting breach of fiduciary duties and employee privacy and non-compete agreement (Count VI), and civil conspiracy (Count VII).[1] ECF 1 (complaint). Pending before the Court is Defendants' Motion to Dismiss Counts I, IV, and VII (the "Motion"). ECF 9. Plaintiff filed an opposition, ECF 11, and Defendants filed a reply, ECF 12. All filings include memoranda of law.[2] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See*

---

[1] Counts I, II, III, V, and VII are brought against Withy and Cheek (the "Individual Defendants"). ECF 1. Counts II, III, IV, VI, and VII are brought against Hyperport. *Id.*

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendants' Motion is **DENIED**.

## I. BACKGROUND

Xona alleges that it "enables companies to remotely and securely access operational technology – anytime, anywhere, on any device." ECF 1, at 1 ¶ 1. Withy was employed by Xona as Chief Technology Officer from March 1, 2023 until his resignation on April 5, 2024. *Id.* at 3 ¶ 2. Cheek was employed by Xona as Vice President of Global Sales from December 1, 2021 until his termination on March 11, 2024. *Id.* ¶ 3. According to the Complaint, while employed by Xona, Withy and Cheek "founded their own company, Hyperport, to compete with Xona." *Id.* at 2 ¶ 2. Withy is the CFO and an officer of Hyperport, *id.* at 3 ¶ 2, and Cheek is the CEO and registered agent of Hyperport, *id.* ¶ 3.

Plaintiff alleges that "[i]n consideration of their employment [with Xona], Individual Defendants agreed to and signed Inventions Assignment and Confidentiality Agreements [the "Confidentiality Agreement"]." *Id.* at 4 ¶ 8. The Confidentiality Agreement included the following non-solicitation provision:

> During Obligor's [Withy's and Cheek's] engagement with the Company [Xona] and for a period of one (1) year thereafter, Obligor will not directly or indirectly use trade secrets to (a) solicit suppliers or customers of the Company if the identity of the supplier or customer or information about the supplier or customer relationship is a trade secret or is otherwise deemed confidential information within the meaning of California law, and (b) request or advise any suppliers or customers to withdraw, curtail, or cancel any business they have with the Company.

ECF 1-2, at 3 ¶ 14; ECF 1-3, at 3 ¶ 14. Plaintiff alleges that "Xona took numerous precautions to maintain the confidentiality of its customer list, pricing, revenue, and other sensitive business information in order to prevent it from being disclosed to third parties, including: reminding employees of their duties of confidentiality, maintaining confidential information in electronic databases protected by adequate security measures and requiring authorized usernames and

passcodes to access." ECF 1, at 7 ¶ 18. According to the Complaint, "[t]hese trade secrets provided Xona direct economic value that allowed it to maintain and further develop its business." *Id.*

In April 2024, Xona "learned that Individual Defendants went to work for Hyperport after resigning from Xona." *Id.* ¶ 19. According to the Complaint, "[o]n April 16, 2024, [] Cheek sent an unsolicited email to numerous Xona prospects and contacts, apparently using Xona's customer list information, advertising Hyperport.io as a 'stealth' startup 'building the next generation of Secure Remote Access for OT,' which you claim to 'leverage[e] advancements in Identity, Just in Time Authorization, zero-trust networking (NAC), Scalability, and Multisite distributions.'" *Id.* at 8 ¶ 24. Plaintiff alleges that "[t]hese solutions were developed by Xona and it is impossible for Hyperport to have been able to develop such high-tech offerings within three weeks of its incorporation without using Xona's proprietary and confidential information."[3] *Id.* ¶ 25.

On April 30, 2024, Xona sent a cease-and-desist letter, which also requested that Withy and Cheek return any and all Xona confidential information and technology in their possession. *Id.* ¶ 26. On May 7, 2024, Hyperport's counsel responded to Xona's cease-and-desist demand and confirmed that "Cheek and [] Withy fully intend to abide by all of their obligations pursuant to the [Confidentiality Agreements]" and that "[a]ll of Xona's Proprietary Information [] shall be maintained in strict confidence and trust." *Id.* ¶ 27 (citing ECF 1-7, at 1).

---

[3] According to the Complaint, "Proprietary Information" under the Confidentiality Agreement means "any information of a confidential or secret nature that may be disclosed to the Obligor by the Company or a third party that related to the business of the Company or to the business of any parent, subsidiary, affiliate, customer or supplier of the Company or any other party with whom the Company agrees to hold information of such party in confiden[ce]." ECF 1, at 4 ¶ 10. Plaintiff alleges that "[t]his includes, but is not limited to "Assigned Inventions, marketing plans, product plans, product formulas, business strategies, financial information, forecasts, personnel information, customer lists and data, agreements, trade secrets and domain names." *Id.* (citing ECF 1-2, at 2 ¶ 8 and ECF 1-3, at 2 ¶ 8).

On November 6, 2024, Plaintiff alleges that "Xona learned that the Defendants continued their breach by offering a product that appears to be identical to Xona's (except they changed the color scheme to blue instead of maroon)." *Id.* ¶ 28. Plaintiff brings the instant action claiming that Defendants' "incorporation of Hyperport violated the [Confidentiality Agreement] and Mutual Non-Disclosure Agreements ("NDA") they [had] signed as a condition of their employment," and moreover, "Individual Defendants also apparently used Xona information they [had] wrongfully retained for the benefit of Hyperport's start up and development." *Id.* at 2 ¶ 4.

## II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan,* 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III. ANALYSIS

### A. Choice of Law

"A federal court exercising diversity jurisdiction[4] must apply the choice of law rules of the state in which it sits." *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013). For contract claims, "Maryland applies the law of the state in which the contract was formed... unless the parties to the contract agreed to be bound by the law of another state." *State Auto. Mut. Ins. Co. v. Lennox*, 422 F. Supp. 3d 948, 961 (D. Md. 2019). Here, the Confidentiality Agreement contains a choice-of-law clause: "This Agreement will be governed by and construed in accordance with the laws of the State of Virginia, without giving effect to its laws pertaining to conflict of laws." ECF 1-3, at 4 ¶ 17. Both parties applied Virginia law in making their arguments, and thus neither party appears to dispute that Virginia law controls the claims at issue. ECF 9-1 ("[T]he parties agreed to the application of Virginia law for any disputes between them arising out of the Confidentiality Agreement[.]"); ECF 11, at 7 ("[T]he [Confidentiality Agreement] is

---

[4] As Defendants point out, "the Counts at issue in this Partial Motion [to Dismiss] are based in state law Breach of Contract (Count I); Tortious Interference with Contract (Count IV); and state law Breach of Fiduciary Duties and Contract (Count VI)." ECF 9-1, at 5 n.3. Count II, violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, is the only Count that invokes federal question jurisdiction, but Defendants do not seek to dismiss that Count in the instant Motion. ECF 9-1, at 1.

governed and interpreted according to Virginia law."). In accordance with the choice-of-law provision in the Confidentiality Agreement, the Court will apply Virginia law.

B.   The Non-Solicitation Clause is Not Ambiguous as a Matter of Law

Defendants argue that Counts I, IV, and VII are based, at least in part, on alleged violations of the non-solicitation clause in the Confidentiality Agreement. In moving to dismiss these claims, Defendants argue that the non-solicitation clause is "overbroad as a matter of law due to its extreme ambiguity." ECF 9-1, at 12. For the reasons stated below, the Court declines to find at this early stage of litigation that the non-solicitation clause is facially overbroad and therefore unenforceable.[5]

Defendants aver that "[n]o reasonable employee, faced with this non-solicitation clause, would have clear guidance on how to comply with it." ECF 9-1, at 12. Plaintiff responds that the non-solicitation clause "prevents [Defendants] from utilizing Xona's confidential trade secret information to contact Xona customers to sell Xona-developed solutions under either their own, or Hyperport's, name." ECF 11, at 10. Plaintiff also notes that "Defendants are not prohibited from going to work for a competitor—they are merely prohibited for a period of one year after their employment ends from using Xona's trade secrets to solicit a Xona customer or advise a Xona customer to cancel its business with Xona." *Id.* at 11.

Defendants cite to *GMS Industrial Supply, Inc. v. G & S Supply, LLC*, 441 F. Supp. 3d 221, 231 (E.D. Va. 2020), and contend that similar to an overbroad restrictive covenant in that case, "Xona could utilize this restrictive covenant to prevent Defendants from offering any product that

---

[5] Plaintiff attached copies of the Confidentiality Agreement to the Complaint. ECF 1-2; ECF 1-3. Additionally, Plaintiff incorporated part of the non-solicitation clause into the text of the Complaint. ECF 1, at 5 ¶ 13. The Court will consider the Confidentiality Agreement because it is integral to considering the disputed restrictive covenant, no party disputes its authenticity, and the non-solicitation clause gives rise to the legal rights asserted.

they ever intended to offer," and "Defendants attempting to sell almost any product or service, even if only tangentially related to the products and services offered by Xona, might inadvertently cause a supplier or customer to not do business with Xona in the future." ECF 9-1, at 13. Defendants' interpretation does not track the plain language of the restrictive covenant.

The non-solicitation provision restricts Defendants from "directly or indirectly us[ing] trade secrets to [] solicit suppliers or customers of the company if the identity of the supplier or customer or information about the supplier or customer relationship is a trade secret or is otherwise deemed confidential information within the meaning of California law." ECF 1-3, at 3 ¶ 14. Thus, the solicitation of suppliers and customers is only barred if Defendants use trade secrets in the solicitation *and* the identity of the supplier or customer is a trade secret or the information about the supplier or customer relationship is a trade secret. Contrary to Defendants' contention, this restriction is much narrower than the one at issue in *GMS Industrial Supply*, 441 F. Supp. 3d at 231. In *GMS*, the restrictive covenant prohibited the former employee from "directly or indirectly, entic[ing], solicit[ing] or encourag[ing] any client or customer with whom [the former] [e]mployee had contact or became aware of as a result of [the former] [e]mployee's work with the Company or any known (during the Term) prospective client or customer of the [former employer] to cease doing business with the [former employer], reduce its relationship with the [former employer] or refrain from establishing or expanding a relationship with the [former employer]." *Id.* at 230. While this restriction generated significant ambiguity because "this clause can be interpreted to prohibit [the former employee] from soliciting a company to purchase goods that do not even compete with [the plaintiff's] products," *id.* at 231, that concern is not present here, where the restrictive covenant qualifies its scope by only restricting solicitation through the use of trade secrets, and further qualifies the scope by stating that it only applies to suppliers or customers

7

whose identity is a trade secret or the information about the relationship is a trade secret.[6] As Plaintiff points out, "Defendants are not otherwise barred from soliciting Xona's clients for any competing products that weren't developed using Xona's own trade secrets." ECF 11, at 11. For these reasons, the Court is unable to conclude, from a purely facial analysis, that the non-solicitation clause is unenforceable as a matter of law.

Defendants also maintain that "the 'request or advise' clause says that any action by the Individual Defendants which 'indirectly' 'advised' any 'suppliers or customers' (whether known or unknown to them) to curtail or cancel any business with Xona is prohibited," and thus, "if Defendants unknowingly and/or inadvertently caused any Xona customer or supplier to take any action adverse to their relationship with Xona, Defendants would be in breach of the non-solicitation provision." ECF 9-1, at 14. This is admittedly a closer call given that some courts have held that employees cannot be expected to know all their former employer's customers. *See Lasership Inc. v. Watson*, No. CL–2009–1219, 2009 WL 7388870, at *8 (Va. Cir. Ct. Fairfax Cnty. Aug. 12, 2009) (finding a non-solicitation clause to be an "unreasonable burden on the employee

---

[6] Defendants further argue that the restrictive covenant "prohibit[s] [them] from offering their services to *any* suppliers or customers, in case that indirectly resulted in some loss of business to Xona." ECF 9-1, at 13 (emphasis in original). However, that interpretation is not faithful to the plain language, which states that Defendants are barred from directly or indirectly "us[ing] trade secrets" to solicit suppliers or customers. *See Double Diamond Properties, LLC v. Amoco Oil Co.*, 487 F. Supp. 2d 737, 744 (E.D. Va. 2007) (finding that "Plaintiffs see ambiguity where none exists," and "[r]estrictive covenants are construed from language used in the light of the circumstances under which they were written") (citation and quotation marks omitted). The restrictive covenant at issue would not bar offering services to *any* suppliers or customers; it simply prohibits Defendants from directly or indirectly using trade secrets in any solicitation of suppliers or customers. Additionally, the Court is unpersuaded by Defendants' argument that the use of the term "indirectly" is ambiguous as to scope. As in *Leddy* and *Foti*, the Court will "infer[] a reasonable understanding of the parties' express agreement," and hold that the non-solicitation clause's "prohibition of indirect solicitation [does] not void the contract." *See Leddy v. Comm'cn Consultants, Inc.*, No. CH99-3952, 2000 WL 33259906, at *3 (Va. Cir. Ct. Apr. 5, 2000) (citing *Foti v. Cook*, 220 Va. 800, 807 (1980)).

8

to know all the customers invoiced" in the year following the employee's termination). However, other courts have upheld these types of restrictive covenants. *See, e.g., Foti*, 200 Va. at 805 (upholding a restrictive covenant that prohibited a former partner from "perform[ing] or offer[ing] to perform accounting services for any client of the partnership" for 24 months after the termination of employment); *Zuccari, Inc. v. Adams*, Ch. No. 143224, 1997 WL 1070565, at *2 (Va. Cir. Ct. Fairfax Cnty. Apr. 10, 1997) (upholding a restrictive covenant that prohibited the former employee from "contact[ing] or divulg[ing] information about [the former employer's] customers for five years after termination"). In any event, at this early stage, the Court determines that the non-solicitation clause is "best construed after some factual development so that a reviewing court may determine the reasonableness of the covenants in light of the circumstances of this particular case." *Neustar, Inc. v. Rapp*, No. 18-cv-478, 2019 WL 11232181, at *2 (E.D. Va. Mar. 25, 2019). In essence, Defendants' argument is that the non-solicitation clause is overly burdensome in practice. *See* ECF 9-1, at 17 ("Individual Defendants are prohibited from doing business with, even indirectly or inadvertently, a potentially unknown-to-them class of persons and entities (customers or suppliers). The identities of said products and suppliers may even be secret known only to Xona." (emphasis removed)); *see also* ECF 12, at 5 ("[Plaintiffs] have no way to know [what trade secrets they are prohibited from using] because Xona seems to indicate that its customer lists are 'expressly designated as confidential trade secret information' despite listing them as two separate categories in its definition of Proprietary Information, which might lead a reasonable person to think the trade secrets are something different than proprietary information." (emphasis removed)). Because additional factual development is necessary to properly evaluate reasonableness, Defendants' motion to dismiss is denied. The parties may proceed to discovery and Defendants may renew their arguments regarding overbreadth and

9

ambiguity after a factual record has been developed. *See Combined Ins. Co. of Am. v. Wiest*, 578 F. Supp. 2d 822, 830–31 (W.D. Va. 2008) (denying motion to dismiss despite defendant's argument that "he [did] not know the identity of all of [plaintiff's] policyholders in the relevant geographic area, and [] [plaintiff] did not provide [him] upon his termination any list of policyholders to assist [him] in complying with this non-compete provision," because resolution was "inappropriate . . . at this stage of the proceedings").

Defendants argue that "it is clear [from the Complaint] that Xona, at least, considers its restriction to encompass even *prospective customers*," as Plaintiff alleges that "Defendants sent 'an unsolicited email to numerous Xona prospects and contacts.'" ECF 12, at 7 (emphasis in original). But at this stage of the litigation, Defendants ask the Court to determine whether the non-solicitation clause is unenforceable on its face, thus the Court declines to consider Defendants' take on Xona's interpretation of the scope of the restrictive covenant. As drafted, the Court finds that the non-solicitation clause is sufficiently unambiguous because the plain language restricts Defendants from "us[ing] trade secrets to [] solicit suppliers or customers of the Company." ECF 1-3, at 3 ¶ 14. The plain language is thus not unclear as to scope.

Defendants also argue that the non-solicitation clause is overbroad "based on the use of the phrase 'otherwise deemed confidential information within the meaning of California law,' because such term is undefined and extremely ambiguous," and "California law does not contain one single definition of 'confidential information' and the term appears in caselaw, statutes, and regulations with various meanings and various purposes." ECF 9-1, at 15. Plaintiff responds that "[w]hile employed at Xona, both [] Withy and [] Cheek held executive roles that gave them access to the customer list that Xona expressly designated as confidential trade secret information at the outset of their employment." ECF 11, at 11. Given the factual nature of this argument, the Court agrees

10

with Plaintiff that it is inappropriate for resolution at this stage of the proceedings. *See Combined Ins. Co. of Am.*, 578 F. Supp. 2d at 831.

C.    The Geographic Scope and Duration Are Not Facially Unreasonable

The Court's analysis of restrictive covenants involves "consideration of the restriction in terms of function, geographic scope, and duration." *Simmons v. Miller*, 261 Va. 561, 581 (2001). These limitations must be "considered together," and not as "three separate and distinct issues." *Id.* Defendants do not appear to challenge duration directly, *see* ECF 9-1, at 15–16, but argue that the non-solicitation clause "must be taken in context of the geographic scope of the agreement," *id.* at 16. Defendants maintain that "this non-solicitation [clause] has no geographic limiter and thus must be construed by the courts to be universal in its geographic scope." *Id.* According to Defendants, "[t]his is hardly the unique sort of case where a lack of geographic restraint is reasonable because the rest of the contract is narrowly tailored," rather, here, "the lack of any geographic restraint simply confirms the fatal overbreadth of the non-solicitation clause." *Id.* at 17. Plaintiff responds that "Virginia courts have been consistent in holding that a non-solicitation which is otherwise reasonably tailored need not have a specific geographic limitation." ECF 11, at 12 (collecting cases). Plaintiff also argues that "business is damaged by the theft of customers no matter where this occurs, and that in many industries a former employee can successfully misappropriate customers from any location," and further, "[t]his is especially true in an industry such as Xona's where the entire scope of work for customers can be done remotely via the internet." *Id.* at 13. In short, Plaintiff maintains that "adding a geographic limitation would render the non-solicitation provision meaningless because it would not be reasonably tailored to Xona's business and Defendants would be able to solicit and provide Xona-developed solutions to Xona customers from an area outside of any specific geographic limitation." *Id.*

11

While there is no geographic limitation, the clause at issue restricts Defendants for a period of one year from using trade secrets to solicit Xona's suppliers or customers if the identity or nature of the relationship is a trade secret or is deemed confidential information and prohibits Defendants from using trade secrets to request or advise that any suppliers or customers withdraw, curtail, or cancel any business they have with Xona. ECF 1-3, at 3 ¶ 14. The duration is reasonable in light of the relevant state case law, and Defendants do not appear to argue otherwise. *See Zuccari*, 1997 WL 1070565, at *2 (five-year non-solicitation enforceable worldwide); *McKeever Assocs. v. Giuseppe McKeever Assocs.*, Ch. No. 127234, 1992 WL 885059, at *3 (Va. Cir. Ct. Fairfax Cnty. Dec. 3, 1992) (non-solicitation clause with no geographic restriction and three-year temporal limitation found reasonable); *Leddy*, 2000 WL 33259906, at *2 (affirming non-solicitation clause that prohibited former employee from soliciting former employer's clients for two-year period). Additionally, the Court finds that the phrase "us[ing] trade secrets," qualifies the scope of clause (a) and clause (b) and is not broader than necessary to meet Xona's legitimate business interest. *See* ECF 1, at 7 ¶ 18 (alleging that "Xona took numerous precautions to maintain the confidentiality of its customer list, pricing, revenue and other sensitive business information in order to prevent it from being disclosed to third parties" and importantly, "[t]hese trade secrets provided Xona direct economic value that allowed it to maintain and further develop its business"). Additionally, the Court acknowledges Plaintiff's argument that "the facts that tip the scale in favor of or against enforceability of a given clause, especially as it relates to the factor analyzing the geographic scope, significantly differ between non-competes and non-solicitation provisions." ECF 11, at 13. "Virginia courts have recognized [] the distinction between non-competition agreements—which prohibit any competition with the former employer during the length and scope of the agreement—and non-solicitation agreements—which permit the employee generally to compete with the

former employer, and restrict only his ability to solicit the former employer's customers." *Thomas Rutherfood, Inc. v. Cooley*, No. 07-cv-180, 2008 WL 544848, at *6 (W.D.N.C. Feb. 26, 2008). Here, the non-solicitation clause did not prohibit Defendants from working for a competitor, or even from soliciting Xona's suppliers or customers, so long as the solicitation did not use Xona's trade secrets. Thus, the clause is reasonably tailored to Xona's legitimate business interests and does not unreasonably restrain Defendants' efforts to earn a livelihood, at least on the facts currently presented. Accordingly, the Court finds, after considering the non-solicitation clause in terms of function, geographic scope, and duration, the unlimited geographic scope does not render the clause overbroad as a matter of law, given that other provisions are, at least facially, reasonably tailored. *See Foti*, 220 Va. at 806–07 (enforcing geographically unlimited non-solicitation clause because it only prohibited solicitation of clients).

D.   Plaintiff Should Have an Opportunity to Present Evidence on Reasonableness

Plaintiff argues that "[t]here are several additional recent Virginia cases in which courts have decided that it would not be appropriate to dismiss non-compete and/or non-solicitation covenants," and "[t]his is especially true at the motion to dismiss stage before a plaintiff has an opportunity to present evidence in support of its allegations." ECF 11, at 15 (collecting cases). Defendants respond that even after *Assurance Data*, a Virginia Supreme Court case which held that "restraints on competition are neither enforceable nor unenforceable in a factual vacuum," *Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 144 (2013), courts have "continued to evaluate the enforceability of restrictive covenants as a matter of law at the preliminary motions stage." ECF 12, at 7–8 (citing *Cap. Meats, Inc. v. Meat Shoppe, LLC*, Civ. No. JFM-15-212, 2015 WL 4249166, at *4 (D. Md. July 9, 2015)).

As an initial matter, in *Assurance Data*, the Virginia Supreme Court held that, "[a]n employer may prove a seemingly overbroad restraint to be reasonable under the particular circumstances of the case." 286 Va. at 144. Considering this point, "[s]everal courts have interpreted *Assurance Data* as heavily disfavoring facial challenges to restrictive covenants at the motion to dismiss stage, if not categorically barring such challenges." *Empower AI, Inc. v. Dillahay*, No. 24-cv-83, 2024 WL 4351437, at *6 (E.D. Va. Sept. 30, 2024) (citations omitted). While there is some case law to suggest that courts, under certain circumstances, rule on the merits of a restrictive covenant at the motion to dismiss stage, *see, e.g., Reading & Language Learning Center v. Sturgill*, No. CL-2015-10699, 2016 WL 10880215, at *7 (Va. Cir. Ct. Fairfax Cnty. Aug. 4, 2016), the Court finds, after considering the factual circumstances of this case, it would not be appropriate to do so here. *See Lumber Liquidators, Inc. v. Cabinets To Go, LLC*, 415 F. Supp. 3d 703, 715 (E. D. Va. 2019) (explaining that "Virginia law dictates that the party seeking to enforce a restrictive covenant must be allowed to 'present evidence to demonstrate the reasonableness of the restrictive covenant'"); *see also Southern Trust Mortg., LLC v. Carson*, No. 22-cv-245, 2023 WL 3922623, at *5 (E.D. Va. May 18, 2023) ("[C]ourts . . . have cited to *Assurance Data* to deny motions to dismiss breach of contract claims under Rule 12(b)(6) because restrictive covenants should be construed after factual development."). As the Court previously explained, additional record development is required before the Court can properly evaluate the alleged ambiguity and overbreadth of the non-solicitation clause. For the purposes of the instant Motion, the Court is satisfied that the non-solicitation clause is not facially overbroad.

Additionally, Defendants contend that Plaintiff fails to plead a legitimate justification for its restrictive covenant and states that, "[t]here is no allegation that, for instance, the main value of Xona's company is tied up in its customer relationships and goodwill and this restraint is necessary

to prevent former employees from 'poaching' customers by virtue of employee-customer sales relationships." *See* ECF 9-1, at 11; *see also* ECF 12, at 5 ("Xona has not alleged that they are a company which derives particular value from customer goodwill or secrecy with relation to its customer lists."). However, courts have not required such an allegation to survive the motion to dismiss stage, and in fact, in *Empower AI*, the court held that where the plaintiff "did not specify its justification for the Non-Solicitation Provision in the Complaint, [] ruling on the merits of the Non-Solicitation Provision would [] be premature at the current stage in which the Court is bound by the Complaint." 2024 WL 4351437, at *6. Plaintiff is, of course, still required to plausibly state a claim under Rule 12(b)(6), but a review of the Complaint shows that Plaintiff has put forth sufficient allegations[7] to survive the motion to dismiss, and Defendants have not challenged the sufficiency of the factual allegations beyond their relevance to the allegedly overbroad non-solicitation clause.[8] Accordingly, at this stage, Plaintiff has plausibly alleged that the provision is

---

[7] Specifically, Plaintiff alleges that, "[w]hile employed by Xona, [Defendants] collected Xona's confidential trade secrets involving customer, pricing, revenue, and other sensitive information relating to Xona's business in order to aid Hyperport's start-up and development," ECF 1, at 2 ¶ 2, and "[w]ithin a matter of weeks after the Individual Defendants left their employment with Xona, [] Cheek sent an unsolicited email to numerous Xona prospects and contacts, apparently using Xona's customer list information," *id.* ¶ 3. Plaintiff also asserts that "[t]hese solutions were developed by Xona and it is impossible for Hyperport to have been able to develop such high-tech offerings within three weeks of its incorporation without using Xona's proprietary and confidential information." *Id.* at 8 ¶ 25. And finally, Plaintiff alleges that "Xona took numerous precautions to maintain the confidentiality of its customer list, pricing, revenue, and other sensitive business information in order to prevent it from being disclosed to third parties, including: reminding employees of their duties of confidentiality; maintaining confidential information in electronic databases protected by adequate security measures and requiring authorized usernames and passcodes to access." *Id.* at 7 ¶ 18. According to the Complaint, "[t]hese trade secrets provided Xona direct economic value that allowed it to maintain and further develop its business." *Id.* These facts are plainly sufficient to raise a right to relief above the speculative level.

[8] Because the Court held that the non-solicitation clause is not facially overbroad, and thus it does not warrant dismissal of the Counts that rest on the solicitation clause, the Court finds it unnecessary to reach the parties' dispute over whether Count VII, the civil conspiracy claim, *relies*

15

reasonable and not greater than necessary to protect the employer's legitimate business interests. The Court declines to find the non-solicitation clause facially overbroad.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion, ECF 9, is denied.

A separate implementing Order will issue.

Dated: May 7, 2025                                                              /s/
                                                                    Brendan A. Hurson
                                                                    United States District Judge

---

upon the non-solicitation provision. *See* ECF 11, at 14; ECF 12, at 8 n.3. The Court thus declines to address the issue in more detail at this stage of the litigation.